(No. 74104.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TIMOTHY D. WILSON, Appellee.

*Opinion filed May 20, 1993.*

Roland W. Burris, Attorney General, of Springfield, and Roger T. Russell, State's Attorney, of Belvidere (Norbert J. Goetten and William L. Browers, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Barbara R. Paschen, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Following a bench trial in Boone County, the defendant, Timothy Wilson, was convicted of residential burglary and sentenced to serve six years in the Department of Corrections. The appellate court reversed. We reverse the appellate court and reinstate the conviction and sentence.

The rationale on which the appellate court based its reversal was that the conviction in this case was dependent upon an application of the "limited-authority" doctrine to residential burglary. In its ensuing discussion of the doctrine, the appellate court, second district, noted the decisions of the first, third, and fifth appellate districts which held the doctrine to be applicable to both public buildings and to private residences but declined to follow those decisions. It held to the contrary, that in the second district, the doctrine applied only to the burglary of public buildings.

Succinctly stated, the limited-authority doctrine states that authority to enter a building for a specific lawful purpose is vitiated when the wrongdoer departs from that purpose and commits a felony or theft, thus accommodating the language of the residential burglary statute which provides in pertinent part:

> "A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." Ill. Rev. Stat. 1987, ch. 38, par. 19–3.

While the law in Illinois no longer requires a common law breaking as an essential element of the crime of burglary, the statute requires an entry which is both without authority and with intent to commit a felony or theft. *People v. Weaver* (1968), 41 Ill. 2d 434.

A review of the relevant facts discloses that on December 26, 1988, defendant, Timothy D. Wilson, helped his aunt, Thelma Withrow, move from the residence she had shared with David Dammon. Dammon was not present, as he was on vacation at the time.

When Dammon returned, he found a note from Withrow informing him that she had left the house locked, that his VCR was under the pillow, and that his guns were in the closet. Dammon found, however, that his VCR and two of his guns were missing.

On January 2, 1989, defendant was arrested for an unrelated incident. At the time of arrest, defendant made statements implicating him in the theft of the guns.

At the jail, Deputy David Dylak and Detective Tim Brown of the Boone County sheriff's office interviewed defendant in regard to the guns. Defendant then gave a written, as well as an oral, statement as to the events of December 26, 1988.

At trial, both Dylak and Brown testified that defendant orally admitted that he took the guns and that he did not have permission to enter the Dammon residence. Dylak also read in court the defendant's handwritten confession, which stated:

> "I Helped my aunt move I saw The guns. When we finished moving I went back To get The guns. I went To The Back door and opened IT. I went in got The guns and left. THaT was 12-26-88 I Have Had THem For a week. IT was a white House on 5th ST."

Defendant did not testify at trial but introduced the testimony of Thelma Withrow. She stated that after the move, she felt that she had forgotten something and asked her son, Michael Withrow, and the defendant to go back and check the house. She testified that her son left with the defendant to check on things at Dammon's house, but she was unsure if the two stayed together.

Michael Withrow testified to having helped his mother move on the day in question. He testified that, without his mother's knowledge, he had left Dammon's house unlocked so that he could return later that night to play poker and drink beer with friends. While Michael initially testified that he and the defendant had returned to check on Dammon's house, he later testified that he had remained at his mother's house after the last load, showered, and called friends to invite them to the poker party while the defendant left. He also testified that he was not

present and did not hear his mother ask defendant to return to check on Dammon's house.

On this evidence, the court found defendant guilty of residential burglary in violation of section 19—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 19—3). Defendant appealed, arguing that the State failed to prove beyond a reasonable doubt that he entered Dammon's residence without authority.

On appeal, the appellate court surmised that the trial court's findings indicated that it found the testimony of the aunt credible and that she had given defendant the authority to return to the house one last time. That being true, the appellate court concluded, the trial judge could have convicted defendant only through application of the limited-authority doctrine, which provides that one's otherwise valid authority to be in certain premises is vitiated when that individual acts in a manner inconsistent with the authority originally granted. The appellate court found that the doctrine applied only to public buildings, not private dwellings, and, in a Rule 23 order (No. 2—90—1031 (unpublished order under Supreme Court Rule 23)), reversed defendant's burglary conviction on the ground that the State failed to prove defendant entered Dammon's residence without authority beyond a reasonable doubt.

The State now appeals to this court arguing that: (1) the appellate court misconstrued the trial court's finding when it concluded that the trial judge must have applied the limited-authority doctrine; and (2) if the appellate court correctly interpreted the trial court's findings, the limited-authority doctrine should apply in this case.

## ANALYSIS

### Waiver

As a preliminary matter, we address the defendant's argument that the State is precluded from arguing that

the trial court found that no authority ever existed. Defendant argues that because the State acquiesced, at the appellate court, to the finding that there was authority but that it was breached, the State had thereby waived the argument that defendant never had authority. It appears that the State did not raise this argument until its petition for rehearing to the appellate court.

Although the defendant's argument has technical merit, this court has long recognized that the "responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversarial nature of our system." (*American Federation of State, County & Municipal Employees, Council 31 v. County of Cook* (1991), 145 Ill. 2d 475, 480, citing *Hux v. Raben* (1967), 38 Ill. 2d 223, 224-25.) In light of the evidence in the record indicating the appellate court's misconstruction of the trial court's findings, we choose to review the issue in the interest of justice.

## The Existence of Authority

A reviewing court should not set aside a conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *** '[O]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' (Emphasis in original.)" *Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Vir-*

*ginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

The State argues that the appellate court misconstrued the trial court's finding and that, applying the above principles to the case at bar, the evidence is sufficient to sustain the defendant's conviction. We agree.

The crime of residential burglary requires a person to knowingly and without authority enter the dwelling of another with the intent to commit a felony or theft therein. (Ill. Rev. Stat. 1989, ch. 38, par. 19—3.) The defendant does not deny that he is guilty of theft. Therefore, if the reviewing court finds that a rational trier of fact could find, beyond a reasonable doubt, that defendant did not have authority to enter the dwelling, the conviction must stand.

In this case, Officers Dylak and Brown testified that the defendant made oral statements specifically denying that he had permission to go back to Dammon's house after the move. There was no evidence that defendant repudiated this statement. While it is true Thelma Withrow testified that she asked her son and defendant to go back to check if she left anything at her old address, there is no evidence to corroborate her testimony. Indeed, the testimony of her son, Michael, directly contradicts her assertion that she asked him and the defendant to return to the house. He specifically stated that he stayed at the new home and took a shower after the last load had been dropped off. Further, Michael disavowed any knowledge of his mother's asking defendant to return to Dammon's residence. Accordingly, we find that a rational trier of fact could have found that defendant did not have authority to return to the house beyond a reasonable doubt.

The appellate court found, however, that the trial court did not find the police officers' testimony more convincing than that of Thelma Withrow. In doing so, the appellate

court considered a portion of the trial court's findings at the end of the trial, in which it stated:

"So the question is what was [defendant's] intention when he entered this residence and was he there with or without authority.

Well, there are numerous cases that indicate that a person who uses a ruse in order to get into a residence or building in order to commit a theft is there without authority even though the person may have been let in by somebody.

In this case the defendant in his oral statement told the police that he did not have permission to enter, and he told them that he did not have permission to take the gun or guns.

Now, whether Thelma Withrow [defendant's aunt] thought the defendant was going back to check to make sure that she hadn't forgotten anything or some other purpose, the real point here is what was the defendant's state of mind. Was he going there with an innocent reason under authority and once in there formed an intent to commit a theft, or is this something where the defendant went into the residence with the express intention of committing a theft inside knowing that he was not authorized to enter for that purpose.

Clearly it's the latter by his own statement."

The appellate court found that this comment demonstrated that the trial court credited Thelma Withrow's testimony to the exclusion of all others. The appellate court stated:

"It is clear that the trial court did not reach its conclusion because it disbelieved Thelma that defendant had authority to reenter the Dammon residence and believed defendant when he stated he did not have permission to enter the Dammon residence. Rather, the trial court applied the limited-authority doctrine and found that since defendant only had authority to enter to look for Thelma's belongings and in fact he entered with the intent to steal Dammon's guns, his authority to be there had been withdrawn."

The only support articulated by the appellate court in finding that the trial court applied the limited-authority doc-

trine, however, lies in the statement of the trial court quoted earlier.

We find that this statement by the trial court is at most ambiguous as to its rationale. By that statement, it is by no means clear that the trial judge found Thelma Withrow's testimony more credible than that of Deputy Dylak and Detective Brown. Therefore, rather than reverse the conviction *in toto* due to an insufficiency of the evidence, the better solution would have been to remand the cause and have the trial court articulate whether application of the limited-authority doctrine was the basis for finding lack of authority.

In this case, however, a remand was not necessary, as the trial court had already provided the answer in the negative. After trial, defendant hired new counsel who promoted a post-trial claim that trial counsel had rendered ineffective assistance by failing to call defendant's wife as a witness to support the claim that defendant had received permission to reenter the house. At the hearing, defendant's wife testified to having been present when defendant received permission to reenter the premises, while trial counsel testified that defendant had told him that he had not had permission to do so.

In addressing the claim against trial counsel, the trial court initially dismissed the defendant's wife's testimony for lack of foundation. The court then made the following findings:

> "I did hear from Thelma Withrow herself, who was the person who allegedly was the one who gave permission. I heard that at the trial and determined that the defendant did not have permission.
>
> In addition, I recall the police said that the defendant had made a statement to them that he did not have permission, and Mr. Freek's [defendant's trial counsel's] testimony today is that the defendant told him the same thing. Namely, that he did not have permission to return even

though initially he had permission to be on the premises to move his aunt's items out.

There's also the case of People versus Walker, 191 Illinois Appellate 3rd 382 in which the court held that the fact that a victim allowed perpetrators to enter his home and telephone for help following a purported accident after which he was attacked and robbed did not negate the required lack of authorized entry to support a conviction for residential burglary where the evidence established that the perpetrators entered with the intent to commit a robbery and the victim did not authorize their entry with such intent.

It was my view of the law at the time of the trial and I stated that in my decision and it's still my view today that even if Thelma Withrow had explicitly authorized the defendant to go back at the time he entered, that if in fact he entered with the intent to commit a theft that would still constitute a residential burglary based on that case.

So I found first that he did not have permission to go back at the time that he entered and took the guns. But even if he had, I think that case indicates that this would not have affected the guilt or innocence as far as residential burglary."

From the foregoing, it is clear that while the judge referred to case law in which the limited-authority doctrine was applied, the judge rejected the testimony which would have made resort to the doctrine necessary. The appellate court should not have reached the issue of the limited-authority doctrine and the trial court decision should have been affirmed pursuant to the standard of review established in *People v. Collins* (1985), 106 Ill. 2d 237. Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court. Given our resolution of the matter, we find it unnecessary to address the State's alternative contention that the appellate court erred in rejecting the limited-authority doctrine.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*