THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNIE WRIGHT, Defendant-Appellant.

First District (3rd Division)   No. 1—96—4064

Opinion filed November 25, 1998.—Rehearing denied February 8, 1999.

Michael J. Pelletier and Michael H. Orenstein, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LEAVITT delivered the opinion of the court:

Defendant Johnnie Wright is the owner and proprietor of J&J Company, which is an auto parts recycling yard located in Blue Island, Illinois. On July 29, 1996, defendant was indicted on two counts of possession of a stolen motor vehicle pursuant to section 4—103(a)(1) (625 ILCS 5/4—103(a) (West 1996)), two counts of failure to keep records pertaining to these two automobiles in accordance with section 5—401.2 (625 ILCS 5/5—401.2 (West 1996)), 25 separate counts of failure to keep records pursuant to section 5—401.2(d) (625 ILCS 5/5—401.2(d) (West 1996)), and 25 counts of possession of title without complete assignment pursuant to section 4—104(a)(2) (625 ILCS 5/4—104(a)(2) (West 1996)) of the Illinois Vehicle Code.

Defendant's bench trial concluded on October 15, 1996, with the trial court finding defendant not guilty of counts I and II for possession of a stolen motor vehicle and not guilty of counts III and IV for failure to keep records for these two vehicles. Defendant was found guilty of counts V through XXIX for failure to keep records and guilty of counts XXX through LIV, for possession of title without complete assignment. Defendant was sentenced to three years' incarceration for counts V through XXIX and one year of incarceration for counts XXX through LIV. These sentences were to run concurrently. Defendant now appeals.

On January 25, 1996, Illinois Secretary of State auditor Russell Hoekstra and his two assistants arrived at defendant's lot in order to inspect it. There is little else that defendant and the State agree upon with regard to what occurred next on January 25.

The State presented evidence that when auditor Hoekstra arrived he identified himself and the purpose for his presence. Hoekstra then requested that defendant produce a police book, as well as motor vehicle titles and other records that would be helpful in facilitating his inspection. Defendant produced his police book and an expired business license from 1995. Defendant explained that, although he could produce the title certificates, Hoekstra would have to wait until his secretary returned to the office.

While investigating the cars on defendant's lot, Hoekstra discovered there were 101 vehicles present, two of which had been reported stolen according to a record check of the vehicle identification numbers. Ultimately, 217 titles were produced by defendant and of those there were only 18 that matched the 101 vehicles. Based upon this information, Hoekstra contacted Illinois State Police Officer Terry Lemming, who then obtained a search warrant. The warrant stated in pertinent part:

"I therefore command that you search the premises located at 13723 South Sacremento, Robbins, Illinois, Cook County, which is a fenced in yard with a sign in front that says J&J Company and any other structures within the fenced in yard.

And seize a stolen blue 1987 Ford Taurus Station Wagon, VIN 1FABP55UXHG214127 and a stolen white 1987 Ford Escort, VIN 2FAPP209XHB253735 and any other indicia of auto theft stripping including tools used to dismantle stolen vehicles and rivets used to retag stolen vehicles."

Lemming executed this warrant and placed defendant under arrest. Hoekstra then gave Lemming the police book and titles that were given to him by defendant.

Defendant and coworker Jesse Dawkins maintain that two individuals arrived from the Illinois Secretary of State's office around 8:30 a.m. and that auditor Hoekstra arrived shortly thereafter at 9 a.m. According to Dawkins, Hoekstra and his team of investigators inspected the cars on defendant's lot, as well as cars on other adjoining lots not owned by defendant. Defendant arrived at work between 11 and 11:30 a.m. Defendant was met by auditor Hoekstra, who introduced himself as a Secretary of State employee but did not request any records of any kind, nor were any given to him. Defendant did testify that he explained to Hoekstra that when a car was towed in he would place the title on his secretary's desk, where his secretary would enter the information in the police book and file the title in the desk drawer. In addition to his own titles, defendant testified that other auto part recyclers who had nearby or adjoining lots also kept their titles at his office.

Officers arrived at J&J Company around 1 p.m., and shortly thereafter defendant was placed under arrest. While being placed under arrest, defendant protested that auditor Hoekstra and his assistants were investigating vehicles in other lots and junkyards not owned by him. According to defendant, this plea went unheeded by Hoekstra.

On appeal defendant argues he is entitled to relief because: (1) he was denied effective assistance of counsel when his attorney failed to file a motion to suppress; (2) he was wrongly convicted with respect to

counts V through XXIX for failure to keep records where it was not proven beyond a reasonable doubt he actually owned the vehicles in question and where the trial court made inconsistent evidentiary findings; and (3) that he was wrongly convicted for counts XXX through LIV for possession of titles without complete assignment when there was no finding by the trial court he acted with the requisite mental state.

■ Defendant contends his trial attorney critically erred by failing to file a motion to suppress the evidence recovered· by Officer Lemming. In order to establish ineffective assistance of counsel, a defendant must show that his attorney's representation fell below an objective standard of competence and that, but for this representation, the outcome of his trial or sentencing would have been different. *People v. Albanese*, 104 Ill. 2d 504, 525-26, 473 N.E.2d 1246 (1984); *People v. Babiarz*, 271 Ill. App. 3d 153, 162-63, 648 N.E.2d 137 (1995); see also *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Generally, courts entertain a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Albanese*, 104 Ill. 2d at 526; *Babiarz*, 271 Ill. App. 3d at 163.

Thus, the onus is upon a defendant to show more than a possibility of prejudice; he must show that the alleged error worked to his actual and substantial disadvantage, to the extent that it undermined the confidence of a fair proceeding. *People v. McPhee*, 256 Ill. App. 3d 102, 106, 628 N.E.2d 523 (1993). Despite this arduous standard, this court has sustained claims of ineffective assistance of counsel for failure to file a motion to suppress when the pretrial motion itself was either defendant's strongest defense or was patently meritorious. See *People v. Steels*, 277 Ill. App. 3d 123, 660 N.E.2d 24 (1995); *McPhee*, 256 Ill. App. 3d at 107; *People v. Stewart*, 217 Ill. App. 3d 373, 577 N.E.2d 175 (1991); *People v. Downey*, 198 Ill. App. 3d 704, 556 N.E.2d 300 (1990).

Part of defendant's claim of ineffective assistance of counsel turns on whether auditor Hoekstra impermissibly seized defendant's police book, certificates of title, license application, telephone bill and· advertising bill. The other portion of defendant's claim turns on whether the reception and ultimate seizure of these same documents by Officer Lemming was properly within the scope of the search warrant. With regard to the first part of defendant's argument we find there is simply no factual basis to support his claim that auditor Hoekstra impermissibly seized his police book, certificates of title, license application, telephone bill and advertising bill.

■ The fourth amendment of the United States Constitution and

section 6 of article I of the Illinois Constitution protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *People v. Baltazar*, 295 Ill. App. 3d 146, 149, 691 N.E.2d 1186, 1189 (1998). Underlying these constitutional provisions is the notion that citizens can derive protection from overreaching government actors. However, a search and seizure conducted pursuant to a defendant's valid consent does not violate the fourth amendment. *People v. Graf*, 265 Ill. App. 3d 746, 750, 638 N.E.2d 1181 (1994). Generally, whether a defendant consented to a search is a question of fact. See *People v. Claver*, 162 Ill. App. 3d 62, 64, 515 N.E.2d 324 (1987).

■ The State presented evidence at trial that defendant voluntarily relinquished his police book and certificates of title. Auditor Hoekstra testified that he entered defendant's business and identified himself and the purpose of his visit. Immediately thereafter, Hoekstra requested to inspect defendant's police book and his certificates of title. According to Hoekstra, defendant voluntarily relinquished the police book while the certificates of title were later produced by defendant's secretary. The only evidence defendant cites in support of his assertion that an illegal seizure occurred is his own testimony. The trial court is in a superior position to determine and weigh the credibility of the witnesses, to observe their demeanor, and to resolve conflicts in their testimony. *People v. Carter*, 288 Ill. App. 3d 658, 662, 681 N.E.2d 541 (1997). In this particular instance the trial court found auditor Hoekstra's testimony more credible. Thus, defendant's counsel was not ineffective for failing to file a motion to suppress based upon an illegal seizure.

Defendant also argues, however, that his counsel should have filed a motion to suppress on the grounds that Officer Lemming's seizure of documents went beyond the scope of the warrant in this case. In order to properly resolve this issue, this court first examines whether the warrant described the items sought with sufficient particularity. Only then do we move to the second inquiry of whether Officer Lemming exceeded the scope of this warrant by seizing defendant's police book, certificates of title, license application, telephone bill and advertising bill.

■ Generally, a search warrant must describe with particularity the place to be searched and the items to be seized. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *People v. Rende*, 253 Ill. App. 3d 881, 885, 546 N.E.2d 922 (1993); *People v. Rixie*, 190 Ill. App. 3d 818, 827, 546 N.E.2d 52 (1989). Whether or not the amount of particularity is sufficient for any given warrant must be "determined with a close eye to the particular facts of the case." *Rende*, 253 Ill. App. 3d at 885.

Therefore, it is necessary to determine what degree of specificity could reasonably be expected from law enforcement at the time the search warrant was issued. Such an analysis must of course consider the nature of the items to be seized and the progress of the investigation.

Although a generic description of items to be seized can be satisfactory when a more specific description is unavailable, warrants containing a general description will not pass muster where it is shown that law enforcement knew with particularity the objects they desired. *People v. Allbritton*, 150 Ill. App. 3d 545, 547, 502 N.E.2d 83 (1986). Nevertheless, certain cases and investigations make it inherently difficult to particularly describe what should be seized. For example, a warrant issued to recover stolen goods often offers a general description of items to be seized, since the defendant's exact inventory may be unknown to the police at that time. In those instances a generic description is satisfactory, especially where it can be shown that the items sought will constitute a large portion of the inventory to be searched and seized. *Rende*, 253 Ill. App. 3d at 886.

Defendant states "[n]othing in the warrant authorized seizure of titles, police books ***. They also seized a license application, telephone bill, and advertising bill which were in no way within the scope of the warrant." Defendant supports his argument by relying on *People v. Madison*, 121 Ill. 2d 195, 520 N.E.2d 374 (1988), *McPhee*, 256 Ill. App. 3d at 102, and *People v. Fragoso*, 68 Ill. App. 3d 428, 386 N.E.2d 409 (1979). *Madison* was primarily concerned with whether the police must obtain a search warrant before seizing evidence pursuant to an administrative inspection. *Madison*, 121 Ill. 2d at 201-02. Since it was already determined that auditor Hoekstra did not conduct an unlawful seizure, and since Officer Lemming obtained a search warrant prior to searching or seizing any items in this case, *Madison* is of no help to defendant.

■ *McPhee*, although far more germane to the instant issue, is also distinguishable. In *McPhee*, defendant challenged the scope of a search warrant after police searched his residence. The warrant itself only authorized the search of a Federal Express envelope. The court based its decision on the fact that the warrant explicitly authorized the search of "[a] Federal Express Overnight Letter, measuring approximately 8½" X 11", addressed to A. McPhee, Southside Para-legal 253 East 142nd St. Dolton, IL." *McPhee*, 256 Ill. App. 3d at 109. Even though the envelope had been delivered and was inside the home, the court held that law enforcement had exceeded the scope of the warrant when they conducted a full search of the residence. Suffice it to say the warrant in *McPhee* clearly commanded exactly what could be searched, which was an envelope. *McPhee*, 256 Ill. App. 3d at 109. The

search warrant in the instant case authorized Officer Lemming to seize "any other indicia of auto theft stripping including tools used to dismantle stolen vehicles and rivets used to retag stolen vehicles." The term "indicia" can be read to include written evidence as well as tools. Indicia has been defined as "[c]ircumstances which point to the existence of a given fact as probable, but not certain." Black's Law Dictionary 772 (6th ed. 1991). We believe Officer Lemming's seizure of defendant's license applications, certificates of title, and police book was limited to items that pointed to the existence of auto theft stripping as a probable circumstance. As such, the warrant was sufficiently particular and Officer Lemming did not exceed the scope of this search warrant by seizing the aforementioned items.

■ Defendant correctly notes the advertising and telephone bills that were seized were not within the scope of Officer Lemming's warrant. However, defendant fails to show that these items were introduced into evidence against him at trial. The fourth amendment is not implicated where items allegedly seized illegally are not introduced as evidence against a defendant at trial. See *People v. Foster*, 199 Ill. App. 3d 372, 385, 556 N.E.2d 1289 (1990) (no hearing on a motion to quash a search warrant or to suppress evidence necessary where none of the items seized as a result of a search were introduced at defendant's trial). Even if these items were introduced at trial, defendant fails to indicate the relevance of these items to his convictions, and the trial judge himself makes no specific reference to them in his findings following trial. Due to the foregoing reasoning, we reject defendant's contention that he was denied effective assistance of counsel by his trial attorney's failure to file a motion to suppress.

Defendant next asserts that (1) the State failed to prove him guilty beyond a reasonable doubt with respect to counts V through XXIX, for the offense of failing to keep records (625 ILCS 5/5—401.2(2)(d) (West 1996)); and that (2) the trial court erred in its finding of guilty on counts XXX through LIV (625 ILCS 5/4—104(a)(2) (West 1996)), for the possession of certificates of title without complete assignment; as the trial court failed to properly assess defendant's culpability under the mental state as set forth in *People v. Tolliver*, 147 Ill. 2d 397, 589 N.E.2d 527 (1992). For purposes of clarity we shall address defendant's third issue prior to addressing his second.

■ Defendant contends that the trial court erred when it did not specifically make a finding that defendant acted with knowledge plus a criminal purpose, but found him guilty of counts XXX through LIV for possession of titles without complete assignment. 625 ILCS 5/4—104(a)(2) (West 1996). In his brief, defendant correctly notes that the mental state of knowledge plus criminal purpose must be shown in the instant case. *Tolliver*, 147 Ill. 2d at 397.

In *Tolliver*, the defendant argued that section 4—104(a)(2) of the Illinois Vehicle Code was overly broad and lacked a prescribed mental state so as to allow innocent conduct to be punished as felonious. The court reasoned that its earlier holding of *People v. Gean*, 143 Ill. 2d 281, 573 N.E.2d 818 (1991), which found the mental state of knowledge sufficient to sustain a conviction under section 4—104(a)(2), "require[d] refinement so as not to encompass the innumerable situations where individuals knowingly possess incomplete titles for non-criminal reasons." *Tolliver*, 147 Ill. 2d at 403 (giving five scenarios of innocent conduct that technically violated section 4—104(a)(2) of the Illinois Vehicle Code).

The solution, therefore, was to require the mental state of knowledge plus criminal purpose to be established before a conviction could be sustained for the offense of possession of a certificate of title without complete assignment. *Tolliver*, 147 Ill. 2d at 401; see also *Tolliver*, 147 Ill. 2d at 403, 405-06 (Freeman, J., concurring) (stating "although the majority opinion appears merely to expand upon the definition of 'knowledge,' nevertheless, its modification of the knowledge requirement to include 'knowledge plus criminal purpose' also may be interpreted as enhancing the mental state requirement from knowledge to intent. *** Thus, trial courts may interpret the majority's requirement that the evidence show 'knowledge plus criminal purpose' to mean that the evidence must show 'intent,' as defined by section 4—4 of the Criminal Code").

The second district in *People v. DePalma*, 256 Ill. App. 3d 206, 211, 627 N.E.2d 1236 (1994), held section 4—103(a)(4), which criminalizes the possession of a vehicle without its vehicle identification number plate, also requires the same mental state enunciated in *Tolliver*. *DePalma*, 256 Ill. App. 3d at 211. The defendant in *DePalma* acquired an automobile knowing its vehicle identification number plate was missing and was convicted of such conduct pursuant to section 4—103(a)(4) of the Illinois Vehicle Code. However, the vehicle identification number plate was missing as the result of a prior theft. Defendant had lawfully purchased and registered his automobile even though he was aware of the missing plate.

The court held that the appropriate mental state for this offense must be that of criminal knowledge or knowledge with an intent to defraud or commit a crime, that is, knowledge plus criminal purpose. *DePalma*, 256 Ill. App. 3d at 211, citing *Tolliver*, 147 Ill. 2d at 400-01. "Otherwise a possessor of a vehicle missing a VIN plate who had no criminal purpose whatsoever would be subject to a felony." *DePalma*, 256 Ill. App. 3d at 211; compare *People v. Mayhall*, 291 Ill. App. 3d 650, 654, 684 N.E.2d 174 (1997) (holding that knowledge plus criminal

purpose was satisfied under section 4—103(a)(2) where a body shop mechanic altered the vehicle identification number plate under instruction from his employer; thus, defendant knew it would defraud a third party consumer into believing this was one car when in fact it was pieces from two cars fused together); see 625 ILCS 5/4—103(a)(2) (West 1996).

Similar to *Tolliver*, defendant in the instant case was charged with possessing certificates of title without complete assignment. 625 ILCS 5/4—104(a)(2) (West 1996). Section 4—104 (a)(2) states in pertinent part:

> "(a) It is a violation of this Chapter for:
> ***
> 2. A person to possess any manufacturers certificate of origin, salvage certificate, junking certificate, certificate of title, display certificate without complete assignment."

At the conclusion of defendant's bench trial, the trial court found that defendant:

> "had vehicles that were not entered in his book. Defendant's defense is that he's in the business. I have a secret partner. That I went to the Secretary of State and got licensed to do this business and that I put down Johnny Wright but really J. Crumb was my partner. That I properly ran a business there, but J. Crumb kept his unassigned or improperly assigned titles in my office. That he kept cars on my lot. On my lot although he had a lot close by. Does not make sense. There's no rhyme or reason to doing business like that. Unless the business is being done to circumvent the laws of the State.
> ***
> I am not making a finding that [defendant] was involved in that. May or may not have been involved in that. The State does not have to prove that he was involved in chop shop. That he was involved in stolen autos. Does not have to prove that there were evil motives in him doing this. The fact remains that I find him— beyond a reasonable doubt that he possessed those titles."

■ It is obvious that the trial court found defendant not to be credible; however, it also believed it could assess defendant's culpability based simply on the possession of the open titles notwithstanding the appropriate mental state element required by *Tolliver*. In light of the trial court's failure to find the mental state element of knowledge plus criminal purpose as set forth in *Tolliver*, we now deem it appropriate to remand this matter back to the trial court. See *People v. Koesterer*, 44 Ill. App. 3d 468, 479, 358 N.E.2d 295 (1976) (ruling that where the trial court applied the incorrect legal standard for determining the voluntariness of a confession, the appropriate remedy is that

of a remand, allowing the trial court to redetermine the voluntariness issue under the appropriate legal standard); *People v. Dickerson*, 239 Ill. App. 3d 951, 960, 606 N.E.2d 762 (1992) (remand ordered where trial court erroneously impeded defendant's ability to present his defense by not providing handwriting analysis in a forgery offense; thus, although a new trial was not required, a limited hearing was, so that the trial court could have the opportunity to consider the results of this analysis against its previous findings); *People v. Wilson*, 155 Ill. 2d 374, 382, 614 N.E.2d 1227 (1993) (stating the preferred procedural mechanism for determining whether or not trial court applied "limited authority doctrine" to its findings was to "remand the cause and have the trial court articulate whether application of [this] doctrine was the basis" for its finding); see also *People v. Young*, 124 Ill. 2d 147, 152, 529 N.E.2d 497 (1988) (holding that authority to remand in criminal cases is implicitly contained in Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)) and explicitly in Supreme Court Rule 366 (134 Ill. R. 2d 366)).

Since defense counsel demonstrated his awareness of the *Tolliver* decision, no additional evidentiary hearing is required. A limited hearing now avoids the labor and undue expense of a new trial where no new evidence is likely to emerge. See *Dickerson*, 239 Ill. App. 3d at 960 (holding a limited hearing provides the defendant the relief he is entitled, yet avoids overburdening the criminal justice system with an unnecessary new trial). Accordingly, this cause is remanded to the trial court with instructions to review the existing record applying the appropriate mental state announced in *Tolliver*.

■ Having discussed the appropriate mental state for section 4—104(a)(2), we shall now address defendant's second issue, arguing he was not proven guilty beyond a reasonable doubt under section 5—401.2. 625 ILCS 5/5—401.2 (West 1996). Section 5—401.2(a)(2)(D) states in pertinent part:

"§ 5—401.2 Licensees required to keep records and make inspections.

\* \* \*

(D) The vehicle's manufacturer's identification number or Secretary of State or Illinois Department of State Police Identification number for the essential part shall be ascertained and recorded even if such part is acquired from a person or dealer located in a State, territory, or country which does not require that such information be recorded. If the vehicle's manufacturer's identification number or Secretary of State or Illinois Department of State Police identification number for an essential part cannot be obtained, that part shall not be acquired by the licensee or any of his agents or

employees. If such part or parts were physically acquired by the licensee or any of his agents or employees while the licensee or agent or employee was outside this State, *** that licensee, agent or employee shall not bring such essential part into this State or cause it to be brought into this State. The acquisition or disposition of an essential part by a licensee without the recording of the vehicle identification number or Secretary of State identification number for such part or the transportation in the State by the licensee or his agent or employee of such part or parts shall constitute a failure to keep records." 625 ILCS 5/5—401.2(a)(2)(D) (West 1996).

Section 5—401.2 does not set forth a mental state element to establish a violation of this statute. Generally, this court will not impose a standard of absolute liability absent a clear indication by the legislature or an important public policy. *Gean*, 143 Ill. 2d at 286. Pursuant to the Illinois Code of Criminal Procedure of 1963, when a statute such as section 5—401.2 neither prescribes a particular mental state nor creates an absolute liability offense, then either intent, knowledge, or recklessness applies. *Gean*, 143 Ill. 2d at 288; 720 ILCS 5/4—3(b) (West 1996). The question now becomes what mental state is appropriate for this particular statute.

Section 5—401.2 generally applies to those persons required to be licensed according to sections 5—101, 5—102 and 5—301 of the Illinois Vehicle Code. 625 ILCS 5/5—101, 5—102, 5—301 (West 1996). This licensing requirement under sections 5—101, 5—102 and 5—301 provides that, in order to operate commercially in Illinois, one must comply with certain state regulations. As previously noted, both *Tolliver* and *DePalma* recognized that certain sections of the Vehicle Code were not designed to inflict undue penalty on the inadvertent violator.

In interpreting *Tolliver* and *DePalma*, the *Mayhall* court held that the mental state enunciated in both these cases was " 'criminal knowledge' or 'knowledge with an intent to defraud or commit a crime.' " *Mayhall*, 291 Ill. App. 3d at 654, quoting *DePalma*, 256 Ill. App. 3d at 211-12. Without specifying if such a mental state applied directly to section 4—103(a)(2) of the Illinois Vehicle Code, the *Mayhall* court held that such mental state was "not absent," where the defendant engaged in the unlawful removal of a manufacturer's identification number. *Mayhall*, 291 Ill. App. 3d at 654; 625 ILCS 5/4—103(a)(2) (West 1996). Defendant in that case combined the parts of two automobiles and removed the vehicle identification number plate with knowledge that such an automobile would be represented as one vehicle, when in fact two were fused together. *Mayhall*, 291 Ill. App. 3d at 654.

■ Following *Tolliver*, *DePalma*, and in accord with *Mayhall*, we

now hold that knowledge plus criminal purpose is the mental state requirement for the instant offense as defined by section 5—401.2. 625 ILCS 5/5—401.2 (West 1996). As is evident from the trial court's findings, defendant's culpability was not properly assessed given the trial court's failure to consider the existence of the appropriate mental state. Therefore, defendant's convictions as to counts V through XXIX are reversed and remanded with instructions in accord with those given in the remand of counts XXX through LIV.

■ Defendant also contends his acquittal on counts I through IV was based upon the trial court's finding that the vehicles named in those counts were not on his property. Defendant maintains that since those vehicles were in such close proximity to the vehicles named in counts V through XXIX, it was logically inconsistent to find some on defendant's property and others not. However, the trial court's finding with respect to counts I through IV does not preclude a guilty finding regarding counts V through LIV.

A logical inconsistency absent a legal inconsistency does not require a *per se* reversal. *People v. Jones*, 174 Ill. App. 3d 737, 743, 528 N.E.2d 1363 (1988). A logical inconsistency arises when verdicts can be construed to involve both the acceptance and the rejection of the same theory of a case for the State or the same theory for the defense. *Jones*, 174 Ill. App. 3d at 743. Verdicts that receive a guilty finding upon crime A but not for crime B, although arising from the same set of facts, are not legally inconsistent if the crimes do not share the same essential legal elements. *Jones*, 174 Ill. App. 3d at 743. A reviewing court, despite the logical inconsistency, may nevertheless find that the quantum of evidence put forth by the State was sufficient to prove defendant guilty beyond a reasonable doubt. *Jones*, 174 Ill. App. 3d at 743.

For the reasons set forth herein the defendant's convictions for counts V through LIV are reversed and the matter is remanded for the trial court to reconsider its findings in light of *Tolliver*. *Koesterer*, 44 Ill. App. 3d at 479; *Dickerson*, 239 Ill. App. 3d at 960; *Wilson*, 155 Ill. 2d at 382; *Bowers*, 272 Ill. App. 3d at 611; *Young*, 147 Ill. 2d at 152; 625 ILCS 5/5—401.2(d), 4—104(a)(2) (West 1996).

Reversed and remanded with instructions.

CAHILL, P.J., and CERDA, J., concur.