# Illinois Official Reports

## Appellate Court

*People v. Murray*, 2017 IL App (3d) 150586

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENWAUN A. MURRAY, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0586 |
| Filed | October 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Knox County, No. 14-CF-226; the Hon. Scott Shipplett, Judge, presiding. |
| Judgment | Reversed in part and vacated in part; remanded with instructions. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Karalis, and Editha Rosario-Moore, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>John T. Pepmeyer, State's Attorney, of Galesburg (Patrick Delfino, Lawrence M. Bauer, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justice Schmidt concurred in the judgment and opinion.<br>Justice Wright dissented, with opinion. |

**OPINION**

¶ 1      Defendant, Kenwaun A. Murray, pled guilty to residential burglary and two counts of aggravated battery. Defendant subsequently moved to withdraw his guilty plea, arguing that counsel had incorrectly advised him regarding the legal standards for residential burglary. After inquiring into defendant's claim of ineffectiveness, the circuit court found no possible neglect of the case and declined to appoint new counsel. The court denied the motion to withdraw the plea. On appeal, defendant argues that new counsel should have been appointed to represent him in a full hearing on his ineffectiveness claim. He also argues that the matter should be remanded for new postplea proceedings because defense counsel did not strictly comply with the certification requirements of Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016). We reverse the circuit court's decision to not appoint new counsel, vacate the circuit court's denial of defendant's motion to withdraw his plea, and remand for proceedings consistent with this opinion.

¶ 2                                              FACTS

¶ 3      In a series of informations, the State charged defendant with numerous counts of various felony charges, including armed robbery, aggravated battery, home invasion, residential burglary, and burglary. Defendant would eventually plead guilty to one count of residential burglary (720 ILCS 5/19-3(a) (West 2014)) and two counts of aggravated battery (720 ILCS 5/12-3.05(a)(1) (West 2014)).

¶ 4      At defendant's guilty plea hearing, held on February 13, 2015, the State provided a lengthy recitation of the factual basis for the plea. The State summarized that Galesburg police were called to the Broadview Inn in the early morning hours of June 22, 2014, on reports that two men were bleeding from the head. The victims, Charles Roach and Merlin Evans, were residing at the hotel that night. The hotel manager told the officers that two women had entered a room on the first floor of the hotel. One of the women returned to the lobby to request a key to Room 111. The manager denied her request, and she returned to the room. Later, a third woman, described as a short Hispanic female with dark hair, entered the lobby and proceeded to the same first-floor room.

¶ 5      The manager told the officers that shortly after the third woman approached the room, a tall black male entered the lobby and went to the vicinity of Room 111. The manager then saw the first two women leave that room. After hearing a loud noise from the room, the manager went to investigate. He knocked on the door, after which the Hispanic woman and the tall black male exited the room and left the hotel.

¶ 6      Officer Gregory Huwe reviewed the hotel's surveillance footage, which corroborated the manager's story. In the video recording, the tall black male could be seen carrying a metallic object in his right hand before entering Room 111. Huwe recognized the subject as defendant, based on previous contacts with him. Huwe also recognized the Hispanic woman as Kayla Snider. The videotape showed defendant and Kayla leaving Room 111 shortly after the manager knocked on the door. Defendant was no longer carrying the metallic object. Later, the video showed a white male stagger out of the room holding his head. In Room 111, the officers retrieved a metal car jack, and observed multiple trails of blood. The officers learned at the hospital that the victims, Roach and Evans, had both suffered skull fractures.

¶ 7    Two days later, defendant placed a telephone call to Huwe, after learning there was a warrant for his arrest. Defendant told Huwe "that he would take the charge for beating someone up but claimed at that time he did not commit a robbery."

¶ 8    Kayla, defendant's paramour, told detectives that defendant had struck Roach and Evans in the head with the car jack. In giving detectives this information, Kayla retracted prior written statements she had made in the case. Evans recalled seeing a black man standing over him before he became unconscious. He was "pretty positive" that it was that black male that had struck him.

¶ 9    Defense counsel noted that he was uncertain as to what Kayla "would ultimately testify to," but otherwise agreed with the State's factual basis. The court accepted the factual basis and found defendant's plea was knowing and voluntary.

¶ 10    On February 25, 2015—12 days after pleading guilty—defendant filed a motion to withdraw the plea. In the motion, which was filed through counsel, defendant alleged that the State's evidence would be insufficient to convict him of residential burglary. On May 4, 2015, defense counsel filed a Rule 604(d) certificate, in which he certified that he consulted with defendant regarding contentions of error in the plea proceedings and had reviewed the court file and the report of proceedings of the plea hearing.

¶ 11    At a hearing on May 13, 2015, the circuit court elected to proceed with sentencing before addressing the motion to withdraw the guilty plea. The court sentenced defendant to a term of 15 years' imprisonment for residential burglary, plus two concurrent terms of 5 years' imprisonment for the aggravated battery convictions. After admonishing defendant of his appeal rights, the court stated that a hearing on the motion to withdraw would be held within 30 days, allowing defense counsel to amend the motion to include sentencing issues and to file a new Rule 604(d) certificate.

¶ 12    Defendant filed an amended motion to withdraw his guilty plea on June 12, 2015. The motion, once again filed by counsel, reiterated that defendant had pled guilty under the erroneous belief that the State would be able to prove him guilty beyond a reasonable doubt. Specifically, defendant alleged that the State would not be able to prove that he entered the hotel room "without authority," a necessary element of residential burglary. The motion further alleged that Stephanie Snider would testify that she signed a guest card for the room where the victims were located and that she allowed defendant and Kayla into the room. While the amended motion was pending, defense counsel filed a second Rule 604(d) certificate. The second certificate was identical to the first, referencing only the plea hearing.

¶ 13    On July 22, 2015, the circuit court held a hearing on the amended motion to withdraw the guilty plea. Prior to formally commencing the hearing, defense counsel informed the court that defendant had indicated that he felt counsel had been ineffective because he "had not informed [defendant] of certain things that would have affected his choice to plead guilty." The court subsequently asked defendant what he felt counsel had done incorrectly.

¶ 14    Defendant stated that he told counsel repeatedly that he had not committed home invasion, residential burglary, or burglary. Counsel had asked defendant what he wanted to do, and defendant replied that he had hoped counsel would help guide him. After counsel presented defendant with the State's offer—which defendant would eventually accept—defendant insisted that he was not guilty. Defendant told the court: "[H]e kept on saying but if you went inside that room, if you went inside that room, it's considered

residential burglary." Defendant told the court that, as he considered the plea offer, counsel assured him that "we always can withdrew [*sic*] a guilty plea." Defendant continued:

> "I'm thinking to myself, if I went inside this room, it's really a residential burglary. I'm on camera. I can't sit here and say *** that I, you know, didn't go inside his room. *** I was let inside the room so I'm steady saying to myself, I didn't do it, I didn't do it but he kept saying if I went in, I was guilty."

¶ 15 Defense counsel responded, "I don't disagree with most of what [defendant] says." Counsel did, however, disagree with defendant's allegation that counsel had told him he could always withdraw his plea, as a way of encouraging defendant to take the plea. Counsel told the court, "I would never do that." Counsel continued, "I did give him a frank opinion as to the quality of the evidence and my understanding of the law."

¶ 16 The circuit court declined to appoint new counsel to pursue defendant's claim of ineffectiveness. The court told defendant that counsel "evaluated the evidence and the facts and kind of laid it out for you and he was of a certain opinion that based on the quality of the evidence and his review of the file as to what your chances were and relayed that to you." The court found it unlikely that counsel would have told defendant he could always withdraw his plea. After other arguments, the court also denied the motion to withdraw the guilty plea.

¶ 17 Defense counsel filed a motion to reconsider sentence on July 27, 2015. On August 3, 2015, he filed a third Rule 604(d) certificate. In the third certificate, counsel certified that he had consulted with defendant regarding contentions of error at sentencing and had reviewed the court file and the report of proceedings at sentencing. The court denied the motion to reconsider.

¶ 18                                                 ANALYSIS

¶ 19 On appeal, defendant argues that the circuit court erred in not appointing new counsel to pursue defendant's *pro se* claim of ineffective assistance of counsel. He also argues that none of the three certificates filed by counsel was strictly compliant with Rule 604(d). We agree with defendant on both counts, and remand in accordance with those findings.

¶ 20                                          I. *Krankel* Hearing

¶ 21 Through *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, our supreme court has developed a procedural framework for the resolution of *pro se* posttrial claims of ineffective assistance of counsel. Importantly, a mere claim of ineffectiveness does not automatically warrant the appointment of new counsel to proceed with the claim. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). Instead, the circuit court must first make a preliminary inquiry into the claim, and if those claims show a "possible neglect of the case," appoint new counsel to pursue the claim at a full hearing. *Id.* at 78. A court's determination that a defendant's claim does not demonstrate a possible neglect of the case will be reversed where that decision is manifestly erroneous. *E.g.*, *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 41. " 'Manifest error' is error that which is plain, evident, and indisputable." *Id.* (quoting *People v. Morgan*, 212 Ill. 2d 148, 155 (2004)).

¶ 22 Under the Criminal Code of 2012, "[a] person commits residential burglary when he or she knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another *** with the intent to commit therein a felony or theft."

720 ILCS 5/19-3(a) (West 2014).[1] Thus, the commission of residential burglary requires not merely the entry or presence in a dwelling place, but that those elements be *unauthorized*.

¶ 23    Defendant alleged defense counsel told him that defendant's mere presence in the hotel room made him guilty of residential burglary. Though defendant believed his entry into the hotel room was authorized, counsel's advice that authorization essentially did not matter led defendant to plead guilty. Counsel's purported statement to defendant was at best a misleading oversimplification of the law, and at worst an outright misstatement of the law.

¶ 24    Our analysis turns on the fact that defense counsel conceded, in large part, to defendant's version of events. Defense counsel stated, "I don't disagree with most of what [defendant] says," with the exception of defendant's assertion that counsel assured him he could withdraw his guilty plea. The present case is not one in which the circuit court was tasked with deciding whether defendant or counsel's version of events was more credible. Here, counsel agreed with defendant, implicitly admitting that he had provided defendant with a potentially incorrect legal standard.

¶ 25    To be sure, very little case law has addressed the precise boundaries of the "possible neglect" standard. This case, however, does not call for this court to engage in such a probing analysis. Where, as here, defense counsel affirmatively misinforms a defendant regarding the elements the State must prove to sustain a conviction, possible neglect of the case is evident. Accordingly, we reverse the circuit court's preliminary denial of defendant's claim and remand the matter with instructions that new counsel be appointed to represent defendant in a full *Krankel* hearing on his claim of ineffective assistance of counsel.

¶ 26                                II. Rule 604(d) Certificate

¶ 27    Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016) requires a defendant who has pled guilty to file a motion to withdraw that plea before any appeal can commence. Where a defendant elects to proceed in this fashion, the same rule requires defense counsel to certify that he has consulted with the defendant regarding the defendant's contentions of error in the sentence and plea and that counsel "has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing." *Id.* Strict compliance with the certification requirements of Rule 604(d) is mandatory; the remedy for a failure to strictly comply is remand for new postplea proceedings. *People v. Janes*, 158 Ill. 2d 27, 33 (1994).

¶ 28    In the present case, defense counsel filed three Rule 604(d) certificates. The first two certificates contemplated only the plea proceedings, with no reference to sentencing. The third certificate contemplated only sentencing, with no reference to plea proceedings. Further, the third certificate—the only one that referenced sentencing—was filed well after the circuit court had denied defendant's motion to withdraw.

¶ 29    The State concedes that defense counsel failed to strictly comply with the certification requirements of Rule 604(d) and agrees that the matter should be remanded. We accept the State's concession, vacate the circuit court's denial of defendant's motion to withdraw his

---

[1] Notably, two other offenses with which defendant was charged—home invasion and burglary—also require the entry or remaining "without authority" as an element of the offense. 720 ILCS 5/19-6 (West 2014) (home invasion); 720 ILCS 5/19-1 (West 2014) (burglary).

plea, and remand the matter for new postplea proceedings.

¶ 30                                                   CONCLUSION
¶ 31        The judgment of the circuit court of Knox County is reversed in part and vacated in part, and the matter is remanded for proceedings consistent with this opinion.

¶ 32        Reversed in part and vacated in part; remanded with instructions.

¶ 33        JUSTICE WRIGHT, dissenting.
¶ 34        I respectfully disagree that defense counsel gave deficient advice. Defendant claims he obtained authority to enter the room by means of a guest card issued to Stephanie Snider that permitted defendant and his companion, Kayla, to enter the victim's room. However, defendant has not acknowledged the "limited authority" doctrine that negates authorized entry when the entrant intends to commit criminal actions once inside the dwelling place of another. See *People v. Wilson*, 155 Ill. 2d 374, 376 (1993).
¶ 35        In *People v. Scott*, 337 Ill. App. 3d 951, 956 (2003), the court held that an individual who is permitted access to a dwelling cannot successfully claim to have made an authorized entry where he entered with the intent to commit a criminal act because an owner would have barred entry if the entrant revealed his true intentions. The determination of whether an entry is unauthorized involves a question of fact dependent on defendant's intent to perform a criminal act after entry was granted. It is well established that consent to enter is negated where the true purpose for the entry exceeds the limited authorization granted. *Id.* at 957.
¶ 36        The factual basis recited to the court makes it clear to me that it was undisputed that this defendant walked into the room while holding a metal object, which was likely used to inflict serious injuries to the occupant of the room. The metal object was found on the floor by the investigating officer and described as a "metal auto jack." Based on these facts, I conclude it was unlikely that a trier of fact would have concluded that defendant had a lawful purpose in mind when he entered the room, with or without a guest pass. I respectfully conclude that defense counsel did not provide arguably deficient advice and would not remand the matter for a *Krankel* hearing. Further, since defense counsel strongly denied telling his client that his client could always withdraw the guilty plea, I also conclude this basis for claimed ineffectiveness is without merit.
¶ 37        For these reasons, I respectfully dissent.