NOTICE

Decision filed 06/12/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220539-U

NO. 5-22-0539

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 20-CF-526 |
| | ) | |
| ARIC L. CORSBY, | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Presiding Justice McHaney and Justice Moore concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the defendant's convictions where the defendant has failed to establish ineffective assistance of counsel, the trial court conducted a proper inquiry into the defendant's claims of ineffective assistance of counsel, and the defendant has forfeited any issue regarding the one-act, one-crime doctrine.

¶ 2     On November 16, 2021, after a jury trial, the defendant, Aric L. Corsby, was convicted of one count of aggravated kidnapping in violation of section 10-2(a)(7) of the Criminal Code of 2012 (Code) (720 ILCS 5/10-2(a)(7) (West 2020)), one count of aggravated battery in violation of section 12-3.05(e)(1) of the Code (*id.* § 12-3.05(e)(1)), and one count of aggravated discharge of a firearm in violation of section 24-1.2(a)(2) of the Code (*id.* § 24-1.2(a)(2)). The defendant was sentenced on February 23, 2022, to 30 years' incarceration within the Illinois Department of

1

Corrections (IDOC) on his conviction of aggravated kidnapping, and concurrent terms of 10 years'
incarceration on his convictions of aggravated battery and aggravated discharge of a firearm.

¶ 3     The defendant filed a timely notice of appeal and now challenges his convictions, raising
three issues for this court's consideration. On appeal, the defendant argues that defense counsel
was ineffective for eliciting other crime evidence and for failing to object to inadmissible hearsay
of other crimes evidence; that the trial court failed to conduct a sufficient *Krankel* inquiry;[1] and,
that the defendant's conviction for aggravated discharge of a firearm should be vacated under the
one-act, one-crime doctrine. For the following reasons, we affirm the defendant's convictions.

¶ 4                                    I. BACKGROUND

¶ 5     On April 28, 2020, the defendant was charged by information with count I: attempted first
degree murder (*id.* §§ 8-4(a), 8-4(c)(1)(C), 9-1(a)(1)); count II: aggravated kidnapping (*id.* § 10-
2(a)(7)); count III: aggravated battery (*id.* § 12-3.05(e)(1)); count IV: aggravated discharge of a
firearm (*id.* § 24-1.2(a)(2)); count V: aggravated unlawful restraint (*id.* § 10-3.1(a)); count VI:
unlawful possession of a firearm (*id.* § 24-3.1(a)(2)); and count VII: domestic battery (*id.* § 12-
3.2(a)(1)). A two-day jury trial was conducted on November 15 and 16, 2021. At the beginning of
the trial, the State informed the trial court that it would not be proceeding on counts V through VII
and those counts were then dismissed by the trial court.

¶ 6     During opening statements, defense counsel stated that "[i]t's a disgusting, despicable,
horrible, horrific thing that occurred. *** I'm not asking you to like [the defendant]. I'm just asking
you to follow the law." Defense counsel was referring to the events, from which the charges
stemmed, that occurred on April 21 and 22, 2020, between the defendant and his girlfriend,

---

[1]Hearings investigating *pro se* claims of ineffective assistance of counsel held pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), are commonly referred to as a *Krankel* inquiry or a *Krankel* hearing.

Danielle Whitehead. According to Whitehead's testimony, the defendant had choked her until she had "passed out several times," "thrown her against walls by her hair," and "was stomped on, kicked, and punched." Whitehead also testified that she had attempted to escape the defendant but that the defendant had used shoelaces to tie her ankles and wrists. Whitehead was not certain when the defendant removed the ties but testified that the defendant later retrieved a .22-caliber pistol, loaded it, and then fired the weapon several times into the wall above the bed on which Whitehead was lying. Whitehead stated that the defendant then moved onto the bed; positioned himself on top of her; placed the pistol to the back of her neck; cocked it; and, that the pistol fired while she was grabbing at it. Whitehead testified that she received burns from the pistol on the back of her neck and an injury to her finger when the pistol was discharged. Whitehead stated that she was finally able to escape when the defendant fell asleep and she ran to a neighbor's home to call law enforcement.

¶ 7     On cross-examination, defense counsel asked Whitehead how many times she had called the police on the defendant in the past. In response, Whitehead testified to an earlier incident in which the defendant had choked her, and she had called the police. Whitehead stated that the defendant was "on the run for awhile" after the incident until he was arrested after getting into an altercation with an individual at a gas station. Whitehead stated that the defendant had been arrested for the altercation, but that she was not certain whether the defendant was charged for the choking incident because she had informed law enforcement that she did not want to press charges. Whitehead also acknowledged that she had recently pleaded guilty to discharging a firearm.

¶ 8     Dr. Philip Witkop, the emergency room doctor who treated Whitehead's injuries after the current incident, was called by the State. Dr. Witkop testified regarding the injuries that Whitehead had received and further testified that Whitehead had reported to him that she had been choked by

3

the defendant in the past, "but he had never hit her or harmed her as severely as he had done this time."

¶ 9    The State also called Randy Clem, a law enforcement officer with the City of Decatur, who responded to Whitehead's emergency call. Clem testified that upon his arrival, Whitehead was visibly upset, cold, battered, and had visible injuries. Clem stated that he called an ambulance, followed Whitehead to the hospital, and took photographs of her injuries. Clem then identified the photographs and the injuries that the photographs depicted. Without objection, the photographs were admitted into evidence by the trial court.

¶ 10    Jason Derbort, a detective with the City of Decatur, was also called by the State and testified to the condition of the residence in which the incident occurred. Derbort identified two shoelaces found at the residence, photographs of the defects in the wall of the bedroom that appeared to be caused by bullets, and a revolver that was recovered from a freezer in the residence. The shoelaces, photographs, and revolver were admitted, without objection, into evidence by the trial court.

¶ 11    The State rested and the defense presented no witnesses. The jury found the defendant not guilty of attempted murder; however, the jury went on to find that the allegation that the defendant personally discharged a firearm in connection with the attempted murder charge was proven. Since the jury had acquitted the defendant of attempted murder, the trial court held that the jury's finding that the defendant had personally discharged a firearm in connection to the attempted murder charge was rendered moot. The jury further found the defendant guilty on the remaining charges of aggravated kidnapping, aggravated battery, and aggravated discharge of a firearm.

¶ 12    On February 22, 2022, the defendant filed a motion for new trial. The motion alleged that there was insufficient evidence to prove the defendant guilty beyond a reasonable doubt and that

the jury's verdict was against the manifest weight of the evidence. The defendant's motion for new trial was heard on February 23, 2022, prior to his sentencing hearing. The trial court noted that the evidence at trial was "very strong, if not overwhelming" and denied the defendant's motion for new trial.

¶ 13    The trial court then proceeded to a sentencing hearing and sentenced the defendant to 30 years' incarceration within the IDOC on his conviction of aggravated kidnapping, and concurrent terms of 10 years' incarceration on his convictions of aggravated battery and aggravated discharge of a firearm. On March 11, 2022, the defendant filed a *pro se* notice of appeal. The notice of appeal stated that the defendant was appealing his conviction of November 16, 2021, and also alleged ineffective assistance of counsel stating that defense counsel had only met with the defendant twice prior to trial. The notice of appeal also stated that the possession of a firearm charge had been dismissed, but that the defendant was still sentenced to 10 years' incarceration on the aggravated discharge of a firearm conviction.

¶ 14    The defendant then filed a *pro se* motion for ineffective assistance of counsel on March 25, 2022. The defendant's motion for ineffective assistance of counsel alleged that defense counsel "instructed the jury I was despicable, horrible, and disgusting"; that no forensic testing was done on the weapon; that no gunshot residue (GSR) testing was conducted; and, that defense counsel had only met with the defendant twice before trial.

¶ 15    The defendant also filed a *pro se* motion to reconsider his sentence on March 25, 2022. The motion to reconsider alleged that the discharge of a firearm verdict was rendered moot; that the unlawful possession of a firearm was vacated, yet he still received a sentence of 10 years; that the sentence was excessive given that it was the defendant's first adult conviction; and, that his mental health was never taken into consideration. Both motions were dated March 23, 2022.

5

¶ 16    The trial court conducted a hearing on March 31, 2022, noted that no motion to reconsider had been filed by counsel, and that the defendant's *pro se* notice of appeal contained allegations of ineffective assistance of counsel. As such, the trial court appointed new counsel for the defendant and granted new counsel until May 25, 2022, in which to file a motion to reconsider sentence. The defendant's *pro se* notice of appeal was then stricken as premature and the trial court set the matter for a *Krankel* inquiry.

¶ 17    On May 19, 2022, the defendant, through counsel, filed a motion to reconsider sentence. The motion alleged that the defendant's sentence was excessive given that the State failed to prove the attempted murder charge and that the trial court should have given more weight to the defendant's mental health issues, lack of parental oversight, and educational shortcomings.

¶ 18    The trial court addressed the defendant's allegations of ineffective assistance of counsel and motion to reconsider sentence at a hearing conducted on August 11, 2022. The defendant was represented by new counsel and his prior defense counsel (trial counsel) was also present. The trial court inquired as to the defendant's allegation that trial counsel had only met with the defendant two times prior to trial. The defendant stated that the two meetings were approximately 10 minutes in duration and that he would attempt to contact trial counsel by letters and telephone calls and would not get a response. The defendant's trial counsel acknowledged that he only visited the defendant "a couple of times" but stated that it was for longer periods of time to discuss trial strategy, the offer by the State, and to go through discovery. The trial court also addressed the defendant's claims regarding the dismissal of the possession of a firearm charge, that no forensic testing was done on the weapon, and that no GSR testing was conducted. The trial court further allowed the defendant to expand upon his allegation that the trial counsel "never tried to defend me to the jury in this case." Upon completion of the inquiry into the defendant's allegations, the

trial court found that the defendant's allegations did not support the appointment of additional counsel and that a full *Krankel* hearing was not necessary.

¶ 19    The trial court then went on to address the defendant's motion to reconsider sentence. Defense counsel noted that the defendant had filed a *pro se* motion to reconsider and that she had met with the defendant prior to filing, what was basically, the amended motion to reconsider. Defense counsel then argued that the defendant's sentence was excessive given his age, mental health issues, and educational shortcomings. Upon completion of the arguments, the trial court noted that the facts of this case were very egregious, and that the defendant had terrorized the victim. The trial court further noted that the sentence imposed was a mid-range sentence, and that it had considered all the factors in aggravation and mitigation. As such, the trial court denied the defendant's motion for reconsideration. The defendant timely appealed.

¶ 20                                    II. ANALYSIS

¶ 21    The defendant raises three issues on appeal. First, the defendant argues that the defendant's trial counsel was ineffective for eliciting highly prejudicial other crimes evidence, and for failing to object to inadmissible hearsay of other crimes evidence. Second, the defendant argues that this matter should be remanded for another preliminary *Krankel* inquiry since the trial court failed to inquire into one of the defendant's claims of ineffective assistance of counsel at its initial inquiry. Third, the defendant alleges that his conviction for aggravated discharge of a firearm should be vacated under the one-act, one-crime doctrine because it is based on the same physical act as his aggravated battery conviction. We will address each issue in the order raised.

¶ 22                        A. Ineffective Assistance of Counsel

¶ 23    The defendant argues that trial counsel was ineffective for eliciting other crimes evidence and for failing to object to inadmissible hearsay of other crimes evidence. The defendant states

7

that trial counsel failed to object to the emergency room doctor's testimony regarding a prior incident in which the defendant had choked Whitehead, despite it being both hearsay and other crimes evidence. The defendant also argues that trial counsel was ineffective when he actively elicited testimony about the same incident during his cross-examination of Whitehead. As such, the defendant argues that he was prejudiced by trial counsel's errors and his convictions should be reversed.

¶ 24 In determining whether a defendant was denied the effective assistance of counsel, we apply the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.* at 687. More specifically, the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant must satisfy both prongs of the *Strickland* test to prevail and the failure to establish either prong precludes the finding of ineffective assistance of counsel. *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 25 We will address only the prejudice prong of the *Strickland* analysis since we find it to be dispositive of this issue. The defendant argues that the other crimes evidence was prejudicial because its admission undermines the confidence in the jury's verdict and biased the jury against the defendant. The defendant argues that, without the other crimes evidence, the jury may have questioned whether the bullet holes were caused by the defendant and the gun recovered actually

8

belonged to the defendant since Whitehead had testified that she had recently pleaded guilty to the offense of discharging a firearm. We disagree.

¶ 26    As the trial court noted during its hearing on the defendant's motion for new trial, the evidence at trial was "very strong, if not overwhelming." Although Whitehead did testify that she had recently pleaded guilty to discharging a firearm, there was nothing in her testimony regarding where that discharge occurred, let alone any testimony that she had discharged a weapon in the bedroom of the residence. At trial, there was no evidence presented by the defendant that contradicted or directly challenged Whitehead's version of events. There was, however, evidence, such as the shoelaces, the bullet holes in the bedroom wall, and Whitehead's injuries, to support Whitehead's testimony. We further note that the State refrained from addressing the other crimes during its redirect examination of Whitehead, and that no mention of the other crimes evidence was made by the State during closing arguments.

¶ 27    "The improper introduction of other-crimes evidence is harmless error when a defendant is neither prejudiced nor denied a fair trial based upon its admission." *People v. Nieves*, 193 Ill. 2d 513, 530 (2000). Given the strength of the evidence presented against the defendant, mixed with the fact that the State did not put any emphasis on the other crimes evidence during redirect examination or closing arguments, any prejudicial effect that may have been produced by the limited reference to the other crimes was overshadowed by the substantial evidence of the defendant's guilt. While we believe that the elicitation of the other crimes and failure to object to hearsay of other crimes was most likely improper, we conclude that these errors were harmless and that the defendant was not denied a fair trial. Accordingly, under the specific facts in this matter, we find that the defendant was not prejudiced by the harmless errors and that the defendant

9

has failed to establish the second prong of the *Strickland* test, thus precluding a finding of ineffective assistance of counsel.

¶ 28                                B. *Krankel* Inquiry

¶ 29     The next issue that the defendant raises on appeal is whether this court should remand the matter to the trial court for an additional *Krankel* inquiry since the trial court failed to address one of the defendant's claims. Specifically, the defendant states that the trial court failed to inquire regarding the defendant's claim that trial counsel was ineffective for telling the jury, during opening statement, that the defendant was "despicable, horrible, and disgusting."

¶ 30     Our supreme court has developed, through *Krankel* and its progeny, a procedural framework for the resolution of *pro se* posttrial claims of ineffective assistance of counsel. *People v. Murray*, 2017 IL App (3d) 150586, ¶ 21. The procedural framework requires the trial court to make a preliminary inquiry into a *pro se* claim of ineffective assistance of counsel and, if the claim shows a possible neglect of the case, appoint new counsel to pursue the claim at a full hearing. *Id.* It has consistently been held that the goal of any *Krankel* proceeding is to facilitate the trial court's full consideration of a defendant's *pro se* claim, thereby potentially limiting issues on appeal, and creating the necessary record for any claims raised on appeal. *People v. Ayres*, 2017 IL 120071, ¶ 13.

¶ 31     The trial court is required to examine the facts and circumstances surrounding the allegedly ineffective representation with the purpose of determining what further action, if any, is warranted on a defendant's claim. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). The trial court may deny the *pro se* posttrial allegations of ineffective representation, without the appointment of new counsel and without holding further proceedings, if the court determines that the claim lacks merit or pertains only to matters of trial strategy. *Id.* at 78. If the defendant's allegations show possible

10

neglect of the case, however, new counsel should be appointed to represent the defendant at a hearing on the defendant's ineffective assistance of counsel claims. *Id.* A trial court can "base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id.* at 79.

¶ 32     We review *de novo* the issue of whether the trial court properly conducted a preliminary *Krankel* inquiry. *People v. Jolly*, 2014 IL 117142, ¶ 28. *De novo* review means that this court owes no deference to the trial court and performs the same analysis that a trial judge would perform. *People v. Robinson*, 2017 IL App (1st) 161595, ¶ 88; *People v. Williams*, 2013 IL App (1st) 111116, ¶ 75. If, however, the trial court properly conducted the *Krankel* preliminary inquiry and reached a determination on the merits of the defendant's claims, we will reverse only if the trial court's action was manifestly erroneous. *People v. Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Id.*

¶ 33     We first note that the report of proceedings demonstrates that trial counsel had stated that "[i]t's a disgusting, despicable, horrible, horrific thing that occurred." He did not, as the defendant alleged, state that the defendant was "despicable, horrible, and disgusting."

¶ 34     The defendant makes no argument that his written claim regarding trial counsel's remark was unclear or that the trial court had misunderstood the nature of his claim. The trial court in this matter heard the opening statement of trial counsel and could determine the insufficiency of the defendant's allegation regarding trial counsel's alleged statement on its face. The trial court also allowed the defendant to expand upon his allegation that trial counsel "never tried to defend me to the jury in this case" and the defendant made no argument concerning trial counsel's opening statement.

11

¶ 35　　Further, even if this court were to determine that the trial court made an error in not conducting an initial inquiry into the defendant's claim, we would not reverse since any such error would be harmless based on the record of proceeding demonstrating that trial counsel did not make the alleged statement directed towards the defendant. See *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 23 ("even if an appellate court finds that a trial court made an error, it will not reverse if it finds that the error was harmless"). Therefore, we find that the trial court properly conducted a preliminary *Krankel* inquiry of the defendant's *pro se* claims and that its judgment was not manifestly erroneous. Accordingly, we decline to remand this matter for further *Krankel* proceedings.

¶ 36　　　　　　　　　　　C. One Act, One Crime

¶ 37　　The defendant's final issue on appeal is whether the defendant's conviction for aggravated discharge of a firearm should be vacated under the one-act, one-crime doctrine. The defendant did not raise this issue in the lower court, but requests that this court review the issue under the plain error doctrine. The plain error doctrine is a narrow and limited exception to the general rule of procedural default which allows plain errors or defects affecting substantial rights to be noticed although the error or defect was not brought to the attention of the trial court. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). An otherwise unpreserved error may be noticed under the plain error doctrine, codified in Illinois Supreme Court Rule 615 (eff. Jan. 1, 1967), if the defendant first demonstrates that a clear or obvious error occurred and then shows that either (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error is so serious that it challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Clark*, 2016 IL 118845, ¶ 42. A violation of the one-act, one-crime doctrine affects the integrity of the judicial

12

process, and thus, a violation of the one-act, one-crime doctrine meets the second prong of the plain error test. *Id.* ¶ 45. The initial step in conducting a plain error analysis, however, is to determine whether an error occurred. *People v. Walker*, 232 Ill. 2d 113, 124 (2009). Without reversible error, there can be no plain error. *People v. Naylor*, 229 Ill. 2d 584, 602 (2008).

¶ 38 Under the doctrine of one act, one crime, a defendant may not be convicted of multiple offenses that are based upon precisely the same physical act or where one of the offenses is a lesser-included of the other. *People v. Lindsey*, 324 Ill. App. 3d 193, 200 (2001). As such, our first step is to determine whether the defendant's conduct was a single physical act. For this purpose, an "act" is "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977); see *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996). "If the court determines that the defendant's convictions are based on multiple acts, the court will determine whether any of the offenses are lesser-included offenses." *People v. Johnson*, 368 Ill. App. 3d 1146, 1163 (2006). A lesser-included offense is one that is established by "proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2-9(a) (West 2020). If none of the offenses are lesser-included offenses, then multiple convictions may stand. *Johnson*, 368 Ill. App. 3d at 1163. We review this issue *de novo*. *Id.*

¶ 39 The defendant does not argue that aggravated discharge of a firearm is a lesser-included offense of aggravated battery with a firearm. Instead, the defendant argues that the defendant fired multiple gunshots, but that the State did not apportion those shots into separate offenses in the information. Thus, the defendant argues that separate convictions for aggravated battery and aggravated discharge of a firearm cannot be sustained citing to *People v. Crespo*, 203 Ill. 2d 335 (2001), and *People v. Amaya*, 321 Ill. App. 3d 923 (2001).

13

¶ 40     In *Crespo*, the victim was stabbed three times and the *Crespo* court found that the information charged the defendant with the same conduct, *i.e.*, stabbing the victim, under different theories of criminal culpability rather than charging each stab wound separately. *Crespo*, 203 Ill. 2d at 344. The *Crespo* court further stated:

> "Here, the State specifically argued to the jury that the three stab wounds constituted great bodily harm. The State never argued that only one of the stab wounds would be sufficient to sustain this charge. Again, it must be pointed out that the State *could have*, under our case law, charged the crime that way, and *could have* argued the case to the jury that way. The State chose not to do so, and this court cannot allow the State to change its theory of the case on appeal." (Emphases in original.) *Id.*

¶ 41     In *Amaya*, the court also found that "[t]he prosecutor never argued that some of the gunshots would be sufficient to sustain a conviction of aggravated discharge of a firearm and that other, separate shots would be sufficient to sustain a conviction of first degree murder and attempted murder." *Amaya*, 321 Ill. App. 3d at 930. The *Amaya* court noted that, during closing arguments, the prosecutor only spoke of the three shots that had struck the victims, and failed to discuss "the other shots that could have supported a separate conviction of aggravated discharge of a firearm." *Id.*

¶ 42     Unlike the facts in *Crespo* and *Amaya*, the State did elicit testimony distinguishing the shots fired in the direction of Whitehead and the single shot which caused injury to Whitehead. Although the defendant argues that the State failed to argue which shots were sufficient to sustain the separate convictions, we disagree. During closing, the State argued as follows:

> "[W]e have the witness telling you that the defendant using this pistol fired the gun after she reached back and grabbed at it, to pull it away from her head.

14

* * *

Now, on an aggravated battery of a firearm, that doesn't mean that she actually got shot. It means that the firearm was discharged and as a result of that discharge, you were injured. As a result of the discharge of the firearm, her hand was burnt, which she suffered an injury. Plain and simple. That's the aggravated battery with a firearm.

* * *

Takes us to number three, the aggravated discharge of a firearm. Certainly, know that that was done. We know it was done probably four times. We know we've got the bullet holes in the wall."

¶ 43    Further, the information in this matter charged the defendant with aggravated battery in that the defendant "knowingly *caused bodily harm* to Danielle Whitehead, in that he *discharged a firearm which caused injury* to Danielle Whitehead." (Emphases added.) The information also charged the defendant with aggravated discharge of a firearm "in that the said defendant knowingly *discharged a firearm in the direction* of Danielle Whitehead." (Emphasis added.) Thus, the information indicated the State's intent to distinguish the discharge of the firearm that caused injury from that of the discharge of the firearm fired in the direction of Whitehead.

¶ 44    Under the specific facts of this case, we do not find *Crespo* and *Amaya* controlling and we will proceed in our determination of whether a single or multiple acts occurred. Whitehead testified that the defendant retrieved the pistol, loaded it, and then while standing on the floor at the foot of the bed, fired approximately three times into the wall above the bed on which Whitehead was lying. Whitehead testified that the defendant then left the foot of the bed; got onto the bed and on top of her; put the pistol into the back of neck; waited there for a minute; and, then cocked the

15

pistol with it touching the back of head. Whitehead testified that the pistol was discharged when she was grabbing it, injuring her finger.

¶ 45    We find that Whitehead's testimony establishes that there was not one single physical act, but two separate physical acts by the defendant involving the pistol. As previously stated, an "act" is "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566. The first physical act was the defendant firing into the wall above Whitehead's head while standing on the floor at the foot of the bed. "A person commits aggravated discharge of a firearm when he or she knowingly or intentionally: *** (2) [d]ischarges a firearm in the direction of another person ***." 720 ILCS 5/24-1.2(a)(2) (West 2020). The defendant discharged a pistol in the direction of Whitehead, and we find that the defendant's physical act of firing into the wall in Whitehead's direction supports the offense of aggravated discharge of a firearm.

¶ 46    The defendant then stopped firing, physically moved onto the bed, placed his body on top of Whitehead, and positioned the pistol to the back of her neck. The pistol discharged while Whitehead was grabbing for it, causing injury to her finger. A person commits aggravated battery when, in committing a battery, he or she knowingly discharges a firearm and causes any injury to another person. *Id.* § 12-3.05(e)(1). We find that the defendant's physical act of causing injury to Whitehead by the discharge of the pistol, and such injury caused separately from those shots fired into the wall, supports the offense of aggravated battery. Since each outward manifestation of the defendant will support a different offense, we find that the defendant committed two separate physical acts.

¶ 47    Based on the foregoing, we find no violation of the one-act, one-crime doctrine and as such, we find that no plain error occurred. Accordingly, the procedural default of forfeiture applies, and the defendant has forfeited this issue on appeal.

16

¶ 48                    III. CONCLUSION

¶ 49    For the foregoing reasons, we find that the defendant has failed to establish ineffective assistance of counsel, that the trial court conducted a proper inquiry into the defendant's claim of ineffective assistance of counsel, and that the defendant forfeited the issue regarding the one-act, one crime doctrine. Accordingly, we affirm the defendant's convictions.

¶ 50    Affirmed.